# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

MAJOR HOWARD ROTE, JR., RET USMC,

    Plaintiff,

    v.

WARDEN RICHARD J. GRAHAM, JR.,
SECURITY CHIEF MICHAEL P. THOMAS,
DANIEL NORTHCRAFT,
DR. COLIN OTTEY,
JANICE GILMORE,
DR. ALI YAHYA,
AVA JAUBERT-CURTIS,
MONICA STALLWORTH-KOLIMAS, MD.,
ISAIASI TESSEMA,
HERBERT MICKEL,
RENATO EXPINA, MD,
DR. RICHARD D. ASCENZO and
WESTERN CORRECTIONAL
INSTITUTION MEDICAL DEPARTMENT,

    Defendants.

Civil Action No. TDC-14-3918

## MEMORANDUM OPINION

Plaintiff Howard Rote, Jr., a self-represented prisoner incarcerated at Western Correctional Institution ("WCI") in Cumberland, Maryland, filed suit under 42 U.S.C. § 1983 alleging violations of his constitutional rights. Pending before the Court are the Motion to Dismiss filed by Warden Richard J. Graham and the Motion to Dismiss or, Alternatively, Motion for Summary Judgment filed by Defendants Colin Ottey, M.D., Janice Gilmore, Ali Yahya, M.D., Ava Jaubert-Curtis, M.D., Monica Stallworth-Kolimas, M.D., Isaias Tessema (incorrectly named in the Complaint as "Isaiasi Tessema"), Renato Espina, M.D. (incorrectly named in the

Complaint as "Renato Expina"), Dr. Richard D. Ascenzo, and Wexford Health Sources, Inc.[1] ("Wexford") (collectively, "the Medical Defendants").  No hearing is necessary to resolve the issues.  *See* D. Md. Local R. 105.6.  For the reasons set forth below, the Motions are GRANTED.

## BACKGROUND

The following facts are presented in the light most favorable to Rote, the nonmoving party:

### I.      Allegations Against Correctional Officers

Rote's Complaint and subsequent filings raise a variety of allegations against correctional officers at WCI.  First, Rote alleges that on December 23, 2009, Correctional Officer Brickman and Sergeant Toolhacker shoved Rote out of his wheelchair into the snow.  One or both of the officers then kicked him causing two hernias in Rote's stomach.  Rote received medical treatment the day following the alleged attack.

Rote, who is hearing impaired, claims that Mark Yates, a Case Manager for the Maryland Department of Corrections, denied Rote access to a teletypewriter ("TTY"), a machine that helps hearing impaired individuals to communicate over the telephone.  Yates justified the denial by falsely claiming to have heard Rote talking on the phone without the use of a TTY.  Rote does not indicate when he was denied use of a TTY, whether that denial is sporadic or continuous, or whether it impedes his communication over the phone.

Rote also alleges that correctional officers, including Sergeant Daddyman, have invaded his privacy by standing in the doorway of his cell while he was speaking with prison medical

---

[1]   Since Wexford provides medical care to inmates at WCI, the Court construes Rote's claims against "Western Correctional Institution Medical Department" as claims asserted against Wexford.

staff.  Rote does not explain when these incidents occurred or whether they interfered with his treatment.

Finally, Rote claims that a correctional officer failed to come to his aid when he complained of head pain.  He does not disclose the name of the officer, the date of the incident, or whether he ever received medical treatment.[2]

## II.   Rote's Medical Care

Rote has been diagnosed with bipolar disorder, chronic pain, hypertension, epilepsy, and ocular hypertension.  Rote has previously had a malignant melanoma and also claims to suffer from basal cell carcinoma, colon cancer, Crohn's disease, shrapnel embedded throughout his body, lumbar disc herniation, glaucoma, grand mal seizures, and chronic headaches due to a traumatic brain injury.  Medical staff at WCI have provided him with disposable undergarments because he is incontinent of bowel and bladder and with prescription medications for some of his conditions.  Although he is generally dissatisfied with the medical treatment he receives at WCI, Rote's primary allegations in this case are that he is not receiving adequate cancer treatment and that his hearing aids have been taken from him.

### A.   Cancer Treatment

Rote claims that he has three types of cancer:  melanoma, basal cell carcinoma, and colon cancer.  Aside from alleging that he is afflicted with colon cancer, Rote offers no details on his treatment or efforts to obtain treatment for this illness.  Records submitted by the Medical Defendants indicate that, on January 9, 2015, a nurse offered to schedule Rote for a colonoscopy.

---

[2]   Rote's Complaint also alleged that Yates and another case manager beat him and that other correctional officers harassed him and retaliated against him.  In a subsequent filing, Rote asked that these claims be dismissed.

He refused.  The nurse reported that Rote's medical file did not corroborate Rote's claim that he had been diagnosed with and treated for colon cancer.

Regarding the melanoma and carcinoma, Rote acknowledges that he has attended consultations with dermatologists during his incarceration at WCI and that moles on his skin have been biopsied and excised.  He alleges, however, that prison medical staff have not provided appropriate follow-up treatment.  Records submitted by the Medical Defendants confirm that, between 2012 and 2015, Rote received multiple consultations with prison medical staff and dermatologists about moles on his skin.  Biopsies were performed on at least three occasions, and each biopsy showed that the tested moles were not cancerous.  The most recent biopsy, on March 9, 2015, was performed in conjunction with an excision to remove a lesion from his skin that ultimately proved non-cancerous.

Rote's records show that he has sometimes disagreed with the course of treatment for his moles.  Rote refused consultations with dermatologists on two occasions, October 2, 2014 and November 14, 2014.  He believed that he should see an oncologist instead.  On November 18, 2014, Defendant Ottey decided not to refer Rote to an oncologist until a biopsy was completed. Rote withheld his consent for that biopsy on November 22, 2014, but he changed his mind and the procedure was rescheduled and performed on January 31, 2015.  The dermatologist who performed the biopsy recommended that the biopsied skin lesion be excised.  Rote again initially refused the procedure, this time because it was to be performed in Baltimore, where his ex-wife lives.  The excision was rescheduled and performed.  The excised lesion was not malignant, so Rote was not referred to an oncologist.

### B.     Hearing Aids

Rote alleges that Defendant Gilmore took his hearing aids, and that the decision to do so amounts to deliberate indifference.  He does not describe when or why his hearing aids were taken, nor does he specify how, if at all, he has been affected by this action.

Records submitted by the Medical Defendants show that Rote has received treatment for his hearing impairment at WCI.  At some point in 2008 or 2009, audiologist Ross Cushing performed a behavioral hearing test on Rote, which showed that he suffered from severe to profound hearing loss in both ears.  Cushing dispensed hearing aids on the basis of that test.

On March 22, 2012, Defendant Yahya ordered a battery for Rote's hearing aid.  On April 2, 2012, Rote complained to Physician's Assistant Beverly Sparks that his hearing loss was worsening and that his hearing aids were broken.  In response, Rote was approved for an audiology consultation with Cushing.  On May 11, 2012, Cushing found that Rote's response to "puretone testing" was similar to his response when Cushing tested him years earlier, but that Rote's "response to verbal speech was inconsistent with his thresholds."  Medical Defs.' Mot. Summ. J. Ex. 28, Cushing Report at 1.  Cushing sought to evaluate Rote's hearing "electrophysiologically with an auditory brainstem response test."  Medical Defs.' Mot. Summ. J. Ex. 26, May 11, 2012 Consultation Report at 1.  Pending that evaluation, Cushing took away Rote's hearing aids.  Rote next met with Cushing on August 22, 2012.  After conducting the tests he had recommended during the previous evaluation, Cushing concluded that, although "Rote does have a mild hearing loss, it is not significant enough for state sponsored hearing aids." Cushing Report at 1.

On September 9, 2013, Dr. Bolaji Onabajo referred Rote for replacement of his hearing aids, which Rote reported having lost.  Onabajo apparently reissued the referral on March 7,

2014.  On August 26, 2014, Onabajo noted in a sick call record that Rote was scheduled to see Cushing.  On December 2, 2014, Rote reported to Defendant Ottey that his hearing had improved and he did not need an audiology evaluation.

The records submitted by the Medical Defendants also indicate that, while Rote still made sporadic complaints of hearing loss after Cushing took back his hearing aids, he had no apparent difficulty communicating with medical staff.  Rote used sign language on occasion, but he does not appear to have relied upon it.  For instance, Registered Nurse Christa Martin noted that, during a December 18, 2014 visit, she easily understood Rote's speech and that, although he began the conversation using sign language, after a few minutes he began communicating verbally without difficulty, answering questions without hesitation.

## III.    Procedural History

On December 17, 2014, Rote filed the Complaint initiating this case.  On January 28, 2015, the Court issued an Order noting that the Complaint failed to provide sufficient detail about Rote's claims.  It granted Rote 28 days to supplement his medical claims and to amend his request for relief to indicate whether he was seeking monetary damages or injunctive relief.  On February 27, 2015, Rote submitted a Supplemental Complaint.  On July 27, 2015, Graham filed a Motion for More Definite Statement.  On August 10, August 12, and August 19, 2015, Rote submitted correspondence regarding his claims.  On August 24, 2015, the Court granted the Motion for More Definite Statement and directed Rote to file a response within 45 days of the Order to provide the date or time frame for several incidents and claims referenced in the Complaint.  The Court cautioned Rote that failure to comply with the Order might result in dismissal of all or part of his claims.

On September 25, 2015, the Medical Defendants filed a Motion to Dismiss or, Alternatively, Motion for Summary Judgment, attaching medical records relating to Rote's treatment at WCI.  On September 30, 2015, Rote filed a document that was docketed as a Motion to Dismiss.  In that document, Rote sought to dismiss any claims against Yahya, Jaubert-Curtis, Stallworth-Kollisman, and Graham.  Rote also asked to add claims against Sergeant Daddyman for invasion of Rote's medical privacy and against Officers Stott and Cesnick for falsely claiming to have found medication outside of Rote's cell door and issuing a notice of infraction on that fabricated basis.  Rote also asserted that he was entitled to the use of TTY, though he did not provide any additional details on Yates's alleged obstruction of that use.  On November 25, 2015, the Medical Defendants filed a Response in Support of Rote's Motion to Dismiss.  On December 7, 2015, Graham filed a Motion to Dismiss.  On December 10, the Clerk of Court mailed Rote a letter informing him that Graham had filed a motion which, if granted, could result in the dismissal of his case.  The letter advised Rote that he could file materials in opposition to the Motion within 17 days and that failure to do so could result in the dismissal of his case without further notice.  Rote has not filed a response to either of the Defendants' motions.

## DISCUSSION

### I.      Legal Standards

#### A.      Motion to Dismiss

Rote's claims against Graham, Thomas, Northcraft, and Wexford are properly considered as the subject of a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  To defeat a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A claim is plausible when the facts pleaded allow "the Court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Id.*  Although courts should construe pleadings of self-represented litigants liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), legal conclusions or conclusory statements do not suffice, *Iqbal*, 556 U.S. at 678.  The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff.  *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005).

### B.    Motion for Summary Judgment

The Medical Defendants have submitted evidence for the Court's review.  Rote had notice that the Court might consider this evidence in ruling on the Motion and did not file an opposition or request that the Court provide him with the opportunity for discovery. Consequently, the Motion will be construed, with respect to the remaining arguments, as a motion for summary judgment.  *See* Fed. R. Civ. P. 12(d).

Under Federal Rule of Civil Procedure 56(a), the Court grants summary judgment if the moving party demonstrates there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In assessing the Motion, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in its favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  The Court may rely only on facts supported in the record, not simply assertions in the pleadings.  *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003).  The nonmoving party has the burden to show a genuine dispute on a material fact.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  A fact is "material" if it "might affect the outcome of the suit under the

governing law." *Anderson*, 477 U.S. at 248.   A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party.   *Id.* at 248-49.

## II.      Claims Against Graham, Thomas, and Northcraft

As discussed above, Rote has requested that the Court dismiss all claims against Graham. In addition, Rote has failed to make any specific allegations against Thomas or Northcraft.   The only reference to them in any of Rote's submissions is in the caption of the Complaint.   To the extent that Rote is seeking to rely on allegations against other correctional officers to establish liability against Thomas or Northcraft, he has not pled facts demonstrating that they are liable in their capacity as supervisors, *see Shaw v. Stroud*, 13 F.3d 791, 798-99 (4th Cir. 1994), and § 1983 does not impose vicarious liability, *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985) (holding that a prison warden must have "personal knowledge of and involvement in the alleged deprivation" of an inmate's rights to be liable under § 1983).   Consequently, the claims against Graham, Thomas, and Northcraft are dismissed.

## III.      Claims Against Correctional Officers

Rote has made allegations against several other correctional officers.   He has not named these officers as defendants in this action.   Even if Rote were to seek leave to amend his Complaint to add these officers as parties, the Court finds that such an amendment would be futile.   *See HCMF Corp. v. Allen*, 238 F.3d 273, 276 (4th Cir. 2001) (stating that a court may deny a motion for leave to amend the complaint when the amendment would be futile).

First, any claim relating to the incident in which Brickman and Toolhacker allegedly threw Rote from his wheelchair and beat him is barred by the statute of limitations.   Because § 1983 does not contain its own statute of limitations, courts must draw from the most analogous

state law cause of action to determine the appropriate statute of limitations. *Owens v. Baltimore City State's Atty's Off.*, 767 F.3d 379, 388 (4th Cir. 2014). Maryland law provides a general three-year limitations period for civil actions, such as personal injury suits. Md. Code Ann., Cts. & Jud. Proc. § 5-101 (2013). A § 1983 "cause of action accrues either when the plaintiff has knowledge of his claim or when he is put on notice—e.g., by the knowledge of the fact of injury and who caused it—to make reasonable inquiry and that inquiry would reveal the existence of a colorable claim." *Nasim v. Warden, Md. House of Correction*, 64 F.3d 951, 955 (4th Cir. 1995). Rote was aware that Brickman and Toolhacker had assaulted him when the assault allegedly occurred. He was also aware of at least some of his injuries from that assault because he sought medical attention the following day. Therefore, Rote's claim accrued on December 23, 2009, more than three years before he filed this action. This claim is time-barred.

Rote has not provided sufficient facts to support his other claims. Rote fails to state a claim regarding TTY access. Although denial of TTY might infringe on a hearing impaired inmate's rights under the Constitution, *see Tanney v. Boles*, 400 F. Supp. 2d 1027, 1041-42 (E.D. Mich. 2005), or Title II of the Americans with Disabilities Act, *see Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 209-10 (1998), Rote's conclusory allegation that Yates denied him use of TTY is insufficient to support such a claim. Rote does not identify the date or dates access was denied, nor does he claim that the denial impeded any conversations. Similarly, Rote's threadbare allegations that correctional officers have invaded his privacy by standing in his cell door while he consults with medical staff and that a correctional officer failed to respond to Rote's complaint of head pains do not state a plausible claim for relief. Rote did not provide additional details about these incidents despite the Court's Order to do so. Thus, these claims are dismissed.

## IV.     Claims Against the Medical Defendants

Rote has requested that his claims against Yahya, Jaubert-Curtis and Stallworth-Kollisman be dismissed.  Because he has failed to allege facts that demonstrate Wexford's liability and because there is no genuine issue of material fact as to his claims of deliberate indifference to his serious medical needs, his remaining claims must also be dismissed.

### A.     Wexford

Section 1983 allows individuals to sue in federal court any person who violates their federally protected rights while acting under the color of law.  42 U.S.C. § 1983 (2012).  The Supreme Court, in *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978), concluded that local government entities are considered "persons" for the purposes of § 1983, but they cannot be held liable solely because they employ an individual who committed an unlawful act.  *Id.* at 690-91.  Rather, local governments can only be sued if the constitutional violation alleged results from a custom or policy of the local government.  *Id.*  This standard also applies to private companies that employ individuals acting under color of state law, such as special police officers, who allegedly commit unlawful acts.  *Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 728 (4th Cir. 1999).  Such companies are liable under § 1983 "only when an official policy or custom of the corporation causes the alleged deprivation of federal rights."  *Id.*

Rote alleges no specific conduct by Wexford, and he does not allege a custom or policy of Wexford that resulted in a deprivation of his constitutional rights.  Affording the most liberal construction to Rote's pleadings, it can be inferred that he seeks to hold Wexford liable because it employed individuals who made decisions about his medical care, which is insufficient to establish liability against a private company under § 1983.  *See Powell v. Shopco Laurel Co.*, 678

F.2d 504, 505-06 (4th Cir. 1982) (dismissing a claim against the private employer of a security guard under § 1983).  Accordingly, the claims against Wexford are dismissed.

### B.     The Medical Defendants

Rote asserts that the remaining Medical Defendants have acted with deliberate indifference to his serious medical needs, in violation of the Eighth Amendment to the Constitution.  The Eighth Amendment prohibits cruel and unusual punishment.  U.S. Const. amend. VIII.  A prison official violates the Eighth Amendment when the official shows "deliberate indifference to serious medical needs of prisoners."  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *see also Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014).  To be "serious," the condition must be "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  *Jackson*, 775 F.3d at 178 (quoting *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008)).  "An official is deliberately indifferent to an inmate's serious medical needs only when he or she subjectively 'knows of and disregards an excessive risk to inmate health or safety.'"  *Jackson*, 775 F.3d at 178 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).  "[I]t is not enough that an official should have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction."  *Id.*  Thus, a deliberate indifference claim has both an objective component, that there objectively exists a serious medical condition and an excessive risk to the inmate's health and safety, and a subjective component, that the official subjectively knew of the condition and risk.  *Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (holding that an official must have "knowledge" of a risk of harm, which must be "objectively, sufficiently serious").

Deliberate indifference is an "exacting standard" that requires more than a showing of "mere negligence or even civil recklessness, and as a consequence, many acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Jackson*, 775 F.3d at 178. To constitute deliberate indifference to a serious medical need, the defendant's actions "must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990).

The Medical Defendants knew of Rote's recurring moles and hearing impairment, and they do not contend that these problems are not serious medical conditions that require treatment. They deny, however, that they failed to treat those conditions adequately and thereby acted with "deliberate indifference" to a serious medical need. *See Estelle*, 429 U.S. at 104. Upon consideration of Rote's medical records, the Court does not find evidence that the Medical Defendants acted with such gross incompetence as to "shock the conscience." *See Miltier*, 896 F.2d at 851.

The records reveal that Rote, who had a history of malignant melanoma, was regularly seen by medical personnel regarding his moles. He attended multiple consultations with dermatologists, resulting in three biopsies and one excision. Rote has pointed to no instance in which he requested to meet with a medical professional and was denied. Indeed, on several occasions, he refused consultations and treatment offered by medical staff, including a colonoscopy to screen him for colon cancer. Rote might have preferred to see an oncologist rather than a dermatologist regarding his moles. However, a doctor concluded that an oncology referral was not necessary unless biopsies revealed that his moles were malignant. Rote's three biopsies showed that his moles were non-cancerous. Rote may disagree with his physicians'

decision to monitor his moles and excise them when necessary, but such disagreements between inmates and physicians over the proper course of care "fall short of showing deliberate indifference." *Jackson*, 775 F.3d at 178; *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985).

Rote has also failed to establish deliberate indifference relating to his hearing impairment. The record reveals that Rote has had at least three consultations with an audiologist. The collection of Rote's hearing aids reflected that audiologist's medical opinion that Rote's hearing loss was not sufficiently severe to merit those devices. Rote has not identified any harm resulting from his loss of hearing aids, and his medical records suggest that he has not had difficulty communicating with medical professionals regarding his care. Just over two weeks before filing the Complaint, Rote canceled a consultation with the audiologist, reporting that his hearing had improved and the appointment was no longer necessary. Rote's disagreement with his physicians regarding whether he should have hearing aids is not sufficient to establish that the Medical Defendants have been deliberately indifferent to his impairment. *See Jackson*, 775 F.3d at 178; *Wright*, 766 F.2d at 849. Consequently, the Medical Defendants are entitled to summary judgment on Rote's Eighth Amendment claims.

## CONCLUSION

For the foregoing reasons, Graham's Motion to Dismiss and the Medical Defendants' Motion to Dismiss or, Alternatively, Motion for Summary Judgment are GRANTED. Rote's Motion to Dismiss is GRANTED IN PART and DENIED IN PART. A separate Order shall issue.

Date:  July 29, 2016                              _____/s/_____
                                                  THEODORE D. CHUANG
                                                  United States District Judge